Christopher Thieme v. Warden FortDix and it's number 23-1697. We will begin with Mr. Yang. Good morning, Your Honors. I'd like to reserve three minutes for rebuttal, please. Granted. In 2018, Congress overhauled the Federal Good Conduct Time Statute with the First Step Act. This case is about the best reading of that statute in light of those amendments, which struck DOP's authority to prorate good conduct time for the final partial year. Well, that's the question, right? Counsel, we don't know exactly what it did, but we do know what motivated it, because this is one of these instances where the mischief that Congress sought to resolve is evident, right? So, why is it that Barber's command isn't adequately answered by simply defining a year as it's ordinarily understood? Well, we think we'd start with a text, as we always do. And we think that in this case, the text is ambiguous as to the meaning of the word year. And we know that from the very last sentence of Section 3624B, in which Congress used the word year to describe last year of a term of imprisonment. And nobody's suggesting that in that case, it's only referring to 12-month periods. In that case, if that were true, then the statute's last line wouldn't cover most prisoners at all, because very few prisoners end with a time served that happens to be divisible by 12. But why shouldn't we think of year as including the fractions of a year? If it's seven and a half years as here, 7.5 years. And we then would use the rate that Congress said at 54 days of good credit per each of the 7.5 years. Well, that's the reason we go to look at a Texas statutory amendment. And as this court instructed in Teneo, we consider the complete package of including statutory deletions, as well as statutory additions. And there are two key deletions here. The first is deletion of the word prorated, which again, we have to be giving full and substantial effect to. And also, they delete the reference to portion of a year. So that we can understand that Congress meant to collapse the distinction between partial and final years, full final years, and then to give each year of the court imposed sentence gives you the full tranche of 54 days of time credit. And that's the only way to give effect to that statutory amendments text. It's now silent as to proration. But we also know that in terms of when that good time credit would be earned, that the prior statute talked about accrediting it within those last six weeks, which would have created a different kind of proration. Why shouldn't we infer that in deleting that, that was that type of proration that Congress had in mind? Well, this actually answers Judge Meady's questions as well, because we view this change as kind of a way to overhaul the entire methodology of calculating good conduct time under Barber. And as you know, it's Judge Krauss, that also included proration. And we think that the removal of proration in this case is consistent because that methodology is no longer in force. And if we were to simply, for example, as the government urges to read, you know, that as merely suggestion or instruction under that methodology, then that proration clause would have been superfluous. And as you know, we presume that every part of the statute will be given full effect. That was because Barber was dealing with the construction of the statute, dealing with the idea that we were looking to the time served, not the sentence imposed. And so I assume you agree that the point of these amendments was to address the problem that Barber teed up. Right. But we don't think that this court is bound by, for example, adopting the reasoning of the Barber dissent, and neither was Congress in doing so. While Barber might have been the starting point, again, the point of the First Half Act reform was to be more generous overall and take away BOP's discretion in many aspects of their administration of rehabilitative programs like this one. And so we think that what Congress is doing here was rewriting the statute entirely with addressing the specific concern at Barber, but also addressing this other concern, which is the proration clause and removing it. It seems odd that they wouldn't have just said it then, right? I mean, if that's, you know, to your point, and I know that's why we're here, if they wanted to write in year means both full year and partial year, it seems like they could have done that given the concerns that you're raising. And so I'm left to wonder, maybe what they wanted to do was to just say a year means a year as ordinarily understood. Well, Your Honor, that's certainly true that Congress could have been more clear. And again, the First Step Act is not a model of clarity. But we know that this court and the Supreme Court has never instructed interpretations of statutory amendments to demand that Congress be, you know, reach a certain level of clarity in order to give that amendment effect. In Van Buren, for example, all that was removed was a single word and an opinion written by Justice Barrett, she counseled that we can't be interpreting that amendment to embrace the very concept that Congress removed. And that concept here is proration. And that's consistent with what this court has done in the Supreme Court's admission not to view statutory amendments as stylistic in Carter v. United States. And we think that the same rule would apply here. Well, it's always dubious and sometimes dangerous for us to be divining what Congress intended in a particular deletion in a statute. We always start with the text, as you've said. Aren't you asking us to understand year to mean less than a year? And why? Why would we do that? Yes, Your Honor, that's because the text is ambiguous on its face, even before we look at the statutory amendments, for the reasons that I said before, which is when we look at the very last sentence of Section 3624B, we know that Congress there used the term year to mean something other than a full 12-month period. So we've got we've got canons like canon of consistent usage and stuff like this. And we want to talk about ambiguity. We the phrase usually means capable of two meanings, sometimes more than two meanings. So one meaning is very obvious, I think, and that is that a year means a calendar year. You say that's not the meaning. What is your definition of meaning that you think would apply here and what would gel also with the canon of consistent usage? Well, we would think that, again, I think the canon of consistent usage in this case has been the very same statutory subsection. So so so that so you're basically saying that so just to unpack that a little bit, the canon cuts against you and you're basically saying, but that canon is not absolute. And this isn't the instance that we're going to look to that canon for for a lot of guidance. But but but and you can address that. But I really want to know kind of when we want to talk ambiguity, it's really nice if you can say, on the one hand, I've got this choice and on the other hand, I've got this choice. Just set that up. Just just I know what's on the one hand. Year means calendar year. That works in my head. What's what's the meaning of year that you think is is different? Give it give that to me as kind of concisely as you can. It's when we divide a sentence by 12 months and the units that we end up with, we round to four units. And those are the years of the sentence that we're talking about in this case. So so, you know, I mean, I don't know. But just so just work with me. The term year means calendar year or X. Fill in what X means like like just what we chunk it up based on like work with me on that. Is this I get that every now and then the phrase like school year can refer to less than 12 months, kind of sometimes. But but but what what's the answer here? Just I want to know the choice on the one hand is this and on the other hand is this. Give that to me in this kind of as concise, you know, if you were to write a legal dictionary and say, oh, it's also capable of this meaning. What would that meaning be? Well, your honor, the phrase here is each year of the court imposed sentence. And as you know, sentencing happens in a matter of months, not years. And so that's why I provided that definition of, you know, dividing by 12 and those units that remain are years. And that would be consistent with other courts. That's just that's just not particularly intuitive in the sense of year means something that's, you know, divide, I guess. I mean, well, but I get your point. Your point is, is federal sentences aren't handed out in years. Right. Everybody is set to guideline speak in months. Sentences are imposed in months. We actually have to go back and figure out how many years that means. And so it's a term of art almost when they're talking about years, what they're talking about is sentencing years and sentencing years really means units divisible by the sentence imposed. And that's what Congress meant. I took that to be your your alternative. That's exactly right. That's a complicated argument. That was the problem. Right. I mean, that that reads a lot into year when we know going back to this point, we know what Barbara wanted to address. We have an answer that accords with the plain meaning of year and the ordinary understanding. It seems to fit the problem that Barbara wanted to address. So, you know, do we have to then turn to context and purpose and this idea of the goals of the first step back in order to get to your alternative reading? Or is there something more concrete that could say, no, you don't need any of that? Here's why. Not at all, your honor. And the reason is, as this court recognized in Al-Hassani, statutory history, which is the record of enacted changes to a statutory text. That's textual evidence that everyone can agree can shed meaning on a statute. And so that's exactly the most clear cut evidence we have in this regard. And the questions that your honors are bringing up about the ambiguity of the text, potential ambiguity in the term year, is precisely the reason why courts apply the rule of lenity in situations quite like this, and including why the Barbara majority and the Barbara dissent both invoked the rule of lenity. This is precisely this kind of situation in which the severity of sentencing is at issue. And we're confronted. But it requires grievous ambiguity, though, right? I mean, are we really at that point, or? We would be, your honor. In United States v. Diaz, United States v. Fleming, this court characterized the grievous ambiguity standard as merely whether there are two plausible interpretations. And we've exhausted every interpretive tool. And we can't get past those two plausible interpretations. I think we get to that line precisely because we have this very good clear cut piece of statutory history language. We also have the plausible interpretations of the text that the other side has raised. And so we're left with a situation in which we should be erring on the side of liberty, precisely because days compounded to years mean thousands of years of prison time that is at stake for the people who are affected by this rule. Before we get to grievous ambiguity, what about the canon that we don't construe statutes in a way that produces an absurd consequence? Do you agree that Congress in the statute set 54 days of good time credit per year as a maximum rate? Well, the standard for invoking that canon in the circuit is very high. Congress must have no conceivable justification for these results. And we think that Congress did have justifications, which is to grant more good conduct time for more people. And so just because this remedy happens to give more credits to some prisoners more than others does not mean that we should take away that reform altogether. And so we don't think this is a case in which the absurdity canon applies precisely because Congress had some reasons, even if they were not the best reasons, if you don't believe them to be so, to be implementing these reforms. But it does result, for example, in someone who has received a sentence of 24 months and a day being released sooner than someone who has received a lesser sentence. Why would Congress have intended that? Well, yes, Your Honor, and we see this in the context of other remedial statutes that have to do with prison time. So, for example, the Residential Drug Abuse Program, RDAP, involves cases in which people who go into prison with a substance abuse disorder with the same conviction, same sentence, might come out earlier. Same goes with the First Step Act's earned time credits. But what's important to know is in this case, Congress is not giving credits to everyone. It's giving it to the most well-behaved prisoners, the people that are most likely to see them outside. And so in that case, we don't see why it would be absurd for Congress to want to get these people out of prison sooner, especially given the context of trying to reduce the federal prison population as a whole. While your time has expired, would you like to take a couple minutes and talk to us about your APA argument? Yes, of course, Your Honor. Well, in this case, the District Court dismissed Mr. Teem's APA claim under the statutory bar codified at Section 3625. That was error. Under their approach, taken by every circuit that's confronted the problem, the very claim at issue here, which is the claim challenging a final agency rulemaking raising a matter of pure statutory construction, is accepted from the statutory bar of 3625. And so it asked that this court reverse that ruling. But with understanding that because Mr. Teem's APA claim only raises a statutory construction claim, the District Court could, of course, resolve it in the same breath as the habeas claim. Just one last question. Where is your client currently? Well, Your Honor, I don't believe he's our client. We were contacted by the court. But we believe that he's in custody in state prison based on the representations of the government in our brief. Thank you. Mr. Crane, good morning. Good morning, Your Honors. May it please the Court, Paul Crane on behalf of the Warden. Judge Mady, I can answer that last question for you. He's currently in custody of the United New Criminal case out of the Northern District of New York. That criminal prosecution is still pending. I ask just because obviously the good time credits require the highest compliance with prison regulations. He's apparently been indicted for a new... I'm sort of curious how that affects this case, if at all. Yeah. So depending on how that case plays out, it obviously might affect his good conduct time credits that might have otherwise already accrued. The government doesn't think it affects this particular case because the nature of his challenge is what is the maximum potential good conduct time credit that he might be eligible for, especially with respect to the final portion of the judicially imposed sentence, that's six months after the 17 years. And because that's the nature of the challenge and the way the Bureau of Prisons conducts projected release dates, it starts off with what's the judicially imposed sentence, subtracts maximum potential good conduct credit, and that sort of calculation is the crux of the issue here. And therefore, regardless of what ends up happening there or frankly in the future, we believe this issue is still not mooted out or otherwise jurisdictional problem. Are you still pressing an exhaustion argument even though we're dealing here with a matter of statutory construction? No, no, Your Honor. We're no longer pressing that exhaustion argument. Rather, we're just focused on the, as this court said, matter of pure statutory construction, no need, given the nature of his challenge to have otherwise exhausted. I will flag, I don't understand his particular argument that it should be 27 days rather than 26 days for that final portion to really be squarely presented here. There might be a potential exhaustion argument there, but again, I don't understand that to be actually front and center in this appeal. Thank you. For the reasons we've said in our brief, we think the district court correctly held that the plain language of Section 3624B1, as amended by the First Step Act, authorizes the Bureau to prorate good conduct time credit for any final portions that are less than a full year. And that is just, if you look just at the plain language, the very first sentence of the as revised statute sets forth how the Bureau is supposed to calculate how much maximum good conduct time credit is available at the rate of 54 per year. Mr. Thiem's and the amicus's argument doesn't actually turn on what's in the text of the statute as revised, but rather hangs almost exclusively on what language was deleted. And for a lot of the reasons your honors have already noted, that argument just can't bear the weight that Mr. Thiem and the amicus is asking it. Well, at least communicates to us that Congress knew well how to talk about handling portions of a year and prorating when it wanted to. And with the amendments, it opted not to make provision for that. Why shouldn't we take some significance from that deletion? And I appreciate the honor. I'm not saying to ignore the deletion, but not to read it as saying the equivalent of, and the Bureau, you are categorically prohibited from prorating good conduct time credit for any final portion that's less than a year. Because part of the revisions were directed, really all of the revisions for 3624B1 were directed at the issue that was out of Barber. And that first sentence revision where the Congress now says that may receive credit of up to 54 days for each year of the prisoners sentenced imposed by the court, fully addresses that. Therefore, what to do at that sort of last portion, especially with respect to the timing, where the amount of good conduct credit, maximum amount, couldn't be determined at the outset in the pre-revised version that Barber was interpreting, that's no longer the case here. The maximum amount of good conduct credit can be determined from day one after the district court imposes a sentence. And so the revisions towards the end are really more a function of that, not Congress saying proration is off the table. The plain language of the first sentence of revisions, the most natural reading is that it includes the possibility of proration. If a company said someone's salary would be $54,000 for each year, I don't think anyone would think that someone who worked 13 or 14 months would get two full years worth of salary. It's the same sort of natural reading of that first sentence. In addition, as your honor noted with my friend, that would lead to extremely bizarre results on a sort of systematic wide level of treating otherwise similarly situated prisoners meaningfully differently for reasons that are not apparent in the text, or really, frankly, the sort of general approach to federal side of the aisle has pointed out, there are circumstances where someone who was meted out a longer sentence can earn good time credit participating in certain programs that lead to an earlier release than someone who had gotten actually a lesser sentence. That's correct. But with one, I think, important caveat, not with respect to good conduct time as opposed to other available credits, such as maybe First Step Act credits, or I know they point to the substance abuse one, but those are instances where people are not being, who are otherwise similarly situated, treated differently. They might be released earlier because they're participating in the First Step Act credit rehabilitation programs, or someone with a approach for Congress to take, which it has explicitly taken in the text of the statute. Conversely, here, there's no textual indication that Congress wanted to treat someone who was sentenced to 24 months and someone who was sentenced to 25 months materially differently, or had the person sentenced to 25 months released earlier based on good conduct time credits, as opposed to maybe other credits that happen to be available only to that second prisoner, or only that that second prisoner took advantage of. If there are no further questions from the court, we'd otherwise rest on a brief and ask the court to affirm. You spent a few minutes talking about your objections to the APA challenge. Sure, Your Honor. I guess the initial objection is, as I understood, especially in how the district court understood this particular determination by the Bureau, it was something that falls within the types of determinations or orders that Congress explicitly says falls outside the APA. Now, as a practical matter, I think we end up at the same place, because the government agrees that under his Section 2241 habeas petition, he's entitled to judicial review of how the Bureau is calculating his potential good conduct credits. But that's not the action he brought. So as we look at the APA challenge before us, why should we consider 3625 to have excluded the ability of courts to review that kind of challenge when it goes to rulemaking, when it goes to the creation of a regulation like the BOPs before us? I think that if, I guess how I've understood and I believe the district court understood the challenges, it wasn't challenging a rulemaking, qua rulemaking, as opposed to the application of the Bureau's policies and regulations to Mr. Thieme. If it was challenging rulemaking, I don't think we disagree with you, Your Honor. Again, we do believe there's judicial review. And as a practical matter, I think it ends up at the same place, because the crux of his, if he made that type of APA argument, is that the Bureau's regulations are inconsistent with the statute, which is, I think, materially identical to the Section 2241, the execution of my sentence challenge, which at least I understand to be what was his claim and I think the district court understood his claim. So again, to the extent my friend on the other side is worried about a lack of judicial review, that is not the government's position, as opposed to Congress said, at least as I understood Mr. Thieme's petition, the APA is not the correct route. Rather, Section 2241 habeas petition, which he did file, is the correct route. But to be clear, to the extent his argument, his argument may be construed as the regulation being ultra-viris to the proper interpretation of the statute, you agree that that would fall under 553, that would not be, a jurisdiction would not be stripped for that review? I think I agree with that, Your Honor. If that is the nature of the claim, that it was a challenge to the rule, which as a practical matter, I think it more or less is, just in terms of a function of the habeas petition, I agree that that's something that would be subject to judicial review. And as a practical matter, again, under the 2241 petition, again, sort of how the district court also construed it, that is basically the same issue either way. Let me ask you another question just to clarify, and so we understand the mechanics of with good time credit. Because part of Amicus's argument seems to be that it's non-discretionary once you cross the anniversary date that 54 days is to be credited, even if it's one day into the next year. The statute talks about May, but that May also seems to be cabined in some ways, and must be, so it's not arbitrary. So what are the bounds of discretion around the earning or, as conversely, the removal of good time credit days? Yes, Your Honor. So there's sort of the initial determination, which I understand to be the focus of this appeal, which is what's the maximum amount available, which pursuant to the statute, I don't, at least as I understand the word discretion, that's not a discretionary as opposed to Congress has established 54 per year, and that might include proration for final portions that are not. Then when it comes to, all right, we've determined, the Bureau has determined what's maximum amount available to a prisoner, then Congress, in the sort of next sentence, identifies the basis under which the Bureau might reduce in part or full that 54 per year amount, which is compliance with institutional regulations, and for certain prisoners, participation either in high school, GED, or literacy programs. And the Bureau has separate regulations that set out in detail both what are the types of violations, there's four levels of potential violations, and then what are the potential consequences, including indicating either the percentage of good conduct credit for a particular year, depending on the corresponding level of severity of the violation. Does that answer your question, Your Honor? Thank you. Okay. Thank you, Your Honors. Thank you. Thank you, Your Honors. I have just three points on rebuttal. The first is I'd just like to point out that no one here is arguing for the interpretation that the government floated belatedly in a supplemental brief that there's no good conduct time available at all for partial years. And that's because, as BOP wrote in its own rulemaking, that would be entirely irreconcilable with Congress's intent in this case, which is to give credit for the entire court-posed sentence. The second question is to address what Judge Krause just raised about discretion. And you'll note that the government's position that my friend on the other side just took was essentially BOP is arrogating to itself the power to decide the upper limit below 54 days for whatever reason at all, if their only limitation is whether or not below that limit they're considering the two factors. That would be entirely irreconcilable with the statutory scheme because it would set no limit at all on BOP's discretion in this standard. That means that BOP could decide tomorrow that, for whatever reason, the maximum rate is now 32 days, taking away hundreds, you know, hundreds of thousands of years from prisoners that they would otherwise be entitled to for good behavior. Well, but the statute uses the term may. Yes, Your Honor. And on the other side of the aisle has pointed out that discretion is cabined by regulations that the BOP has taken on and we expect to abide by. Well, you know, the statute in Woodall, which we cite in our briefs extensively, involved also the use of the permissive term may. But as this court found then, the statutory context and the way the scheme there work, which is 3621, also governing the BOP's discretion over housing placements, was not sufficient to overcome the general context, which made very clear that BOP had to be taking into consideration these factors and be giving opportunities to prisoners to go into community placements. Woodall would not have permitted, even despite the may language, for BOP to decide no community placements for anyone. In fact, that was precisely the reason that this court and the Second Circuit and many other circuits struck down that rule. And just the last point on the APA claim once again, first of all, the district court did in fact say that this is challenging a final rule. But more importantly, that the consensus rule adopted by these circuits, including that was followed in this circuit by in the ABNA, was not just that challenges to agency rulemaking are accepted, but also that challenges on the basis of pure statutory construction. As Judge Krause, you raised, this can be construed, for example, in B.C. Circuit as ultra-virus claim. That's one reason we can accept it from the statutory bar. And the importance in this case of reversing that ruling is not just that Mr. Thiem would be able to get review of his claim, which can already get in but setting the rule for other challenges. And without an APA claim for many, many cases that aren't challenging the fact of duration of confinement, habeas is not available. And so APA is the only cause of action available to get judicial review. And so that's why this court should affirm its rule in the ABNA and the rule set by every other circuit that this judicial review is available for BOP rulemakings that are contrary to law. But in this case, there's no difference in the relief that you seek between 2241 and APA, is there? Well, Mr. Thiem did not get below, but he could get back there under the APA if he was able to succeed in that claim. He could also challenge it as an arbitrary capricious claim. He didn't raise that. But that just goes to show the broader spectrum of relief available on the APA claim could even be relevant in a case where habeas is otherwise available, but that was not the question raised here. So you mean set aside the rulemaking? That's right, set aside nationwide. Well, thank you, Your Honors. We thank both counsel for an excellent briefing, end argument today. A special thanks to the Yale Law School for taking on this amicus appointment and kudos for maintaining a program to support the professional development of our young lawyers.